IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Richard Gavin,
Plaintiff,

v.        Civil No. JFM-10-385

Sandra Grady, et al.
Defendant.

\*\*\*\*\*\*

MEMORANDUM

On April 16, 2010, Plaintiff Richard Gavin ("Gavin" or "Plaintiff") filed an amended complaint, pursuant to 28 U.S.C. § 1332, naming Sandra Grady ("Grady") and John Worden, d/b/a Chick-fil-A of Tuckernuck Plaza, ("Worden") as defendants in a negligence suit in which Plaintiff claims five million dollars ($5,000,000.00) in compensatory damages. Now pending before this Court are Plaintiff's Motion for Summary Judgment on the Issue of Liability, and Defendants' Motion for Summary Judgment in favor of John Worden d/b/a Chick-fil-A of Tuckernuck Plaza. Grady admits that the accident was her fault. Therefore, Plaintiff's motion for summary judgment on the issue of liability will be granted as to Grady. However, for the reasons that follow, I deny Plaintiff's motion as to Worden and grant Defendants' motion in their favor.

I. **Statement of Facts**

This case arises out of a vehicular accident that occurred on August 15, 2007, at or near the intersection of West Street and Somerville Road in Annapolis, Maryland. (Compl. ¶¶ 5-7.) Gavin was operating a motorcycle when Grady, operating a motor vehicle, made an improper lane change and struck Gavin. (*Id.* ¶ 7.) Gavin suffered injuries to his right ankle and other areas of his body as a result of the accident. (*Id.* ¶ 14.)

1

Grady, then a resident of the state of Virginia, was in Annapolis, Maryland on August 15, 2007, attending a three-day training session at a Chick-fil-A restaurant. (*See* Dep. of John G. Worden, Pl.'s Mot. for Summ. J., Ex. B at 6.) At that time, Grady worked as a manager of the Chick-fil-A that Worden owned in Tuckernuck Plaza, near Richmond, Virginia. (*Id.* 5.) Worden had sent Grady to the Annapolis Chick-fil-A to train with its owner, Mike Edmonds, who had trained Worden originally. (*Id.* 8.) While Grady was in Annapolis, Worden paid for her hotel and meals. (*Id.* 7.) Neither Worden nor Grady remembered whether Worden reimbursed Grady for her gas money. (*Id.* 7; Dep. of Sandra Grady, Pl.'s Mot. for Summ. J., Ex. A at 8.)

On the morning of August 15, 2007, Grady left her hotel in Annapolis and traveled to a local diner for breakfast. (Dep. of Sandra Grady, Pl.'s Mot. for Summ. J., Ex. A at 6.) Upon leaving the diner, Grady headed for the Annapolis restaurant where she was scheduled for training that day. (*Id.*) En route to the Annapolis restaurant, Grady struck Gavin. (*Id.*) Grady admits the accident was her fault and that Gavin did nothing to contribute to it. (*Id.*) This suit followed.

**II.     Standard of Review**

Rule 56(a) of the Federal Rules of Civil Procedure provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In *Anderson v. Liberty Lobby, Inc.*, the Supreme Court of the United States explained that in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at

248. In analyzing whether a genuine issue of material fact exists, the evidence and reasonable inferences from that evidence must be viewed in the light most favorable to the nonmoving party. *Id.* at 255.

### III. Discussion

The material facts are not in dispute. Plaintiff claims that he is entitled to summary judgment on the issue of liability of both Grady and Worden. Defendants claim that Worden cannot be held vicariously liable for the alleged negligence of Grady and, therefore, Worden is entitled to summary judgment. The parties' disagreement boils down to whether Grady was acting within the scope of her employment at the time of the accident with Gavin. More specifically, the parties dispute whether at the time of the accident, (1) Worden had authorized Grady to use her personal vehicle in the execution of her duties, and (2) Grady was engaged in the execution of her duties.

In Maryland, "[t]he doctrine of *respondeat superior* . . . allows an employer to be held vicariously liable for the tortious conduct of its employee when that employee was acting within the scope of the employment relationship." *Oaks v. Connors*, 660 A.2d 423, 426 (Md. 1995); *see also*, *e.g.*, *Dhanraj v. Potomac Elec. Power Co.*, 506 A.2d 224 (Md. 1986); *Embrey v. Holly*, 442 A.2d 966 (Md. 1982). "The general test set forth in numerous Maryland cases for determining if an employee's tortious acts were within the scope of his employment is whether they were in furtherance of the employer's business and were authorized by the employer." *Sawyer v. Humphries*, 587 A.2d 467, 470 (Md. 1991).

Importantly, though, the Court of Appeals has recognized that the general rule for deciding scope of employment issues "has been to some extent narrowed with respect to automobiles." *Dhanraj*, 506 A.2d at 226. In *Dhanraj*, the court explained,

3

> On account of the extensive use of the motor vehicle with its accompanying dangers, the courts have realized that a strict application of the doctrine of *respondeat superior* in the modern commercial world would result in great injustice. . . . It is now held by the great weight of authority that a master will not be held responsible for negligent operation of a servant's automobile, even though engaged at the time in furthering the master's business unless the master expressly or impliedly consents to the use of the automobile, and . . . had the right to control the servant in its operation, or else the use of the automobile was of such vital importance in furthering the master's business that his control over it might reasonably [be] inferred.

*Id.* (internal quotations and citations omitted) (quoting *Henkelmann v. Metro. Life Ins. Co.*, 26 A.2d 418 (Md. 1942)); *see also Oaks*, 660 A.2d at 426. Thus, "'[t]he right to control' concept is key to a *respondeat superior* analysis in the motor vehicle context," and, "the doctrine may only be successfully invoked when an employer has either expressly or impliedly, authorized the [servant] to use his personal vehicle in the execution of his duties, and the employee is in fact engaged in such endeavors at the time of the accident." *Oaks*, 660 A.2d at 426-27 (quoting *Dhanraj*, 506 A.2d at 226). Moreover, "driving to and from work is generally not considered to be within the scope of a servant's employment because getting to work is the employee's own responsibility and ordinarily does not involve advancing the employer's interests." *Id.* Accordingly, "absent special circumstances, an employer will not be vicariously liable for the negligent conduct of his employee occurring while the employee is traveling to or from work." *Dhanraj*, 506 A.2d at 226.

Plaintiff contends that Grady "was in the course of her employment at the time of the accident," and therefore, "John Worden is vicariously liable for her negligence." (Pl.'s Mot. for Summ. J. 3.) Plaintiff asserts that the special circumstances required for vicarious liability in the automobile context are present because Grady had implied consent from Worden to use her vehicle in the execution of her duties and Grady was executing her duties at the time of the

accident. (*See* Mem. in Supp. of Pl.'s Opp'n to Def.'s Cross Mot. for Summ. J. 4.) Plaintiff claims that the instant case is most analogous to *L.M.T. Steel Products, Inc. v. Peirson*, 425 A.2d 242 (Md. Ct. Spec. App. 1981), (*id.* 6), in which an employee was involved in a car accident while on his way from his jobsite to a diner to use a public telephone in order to call his employer's home office on a job-related matter. *L.M.T. Steel Prods.*, 425 A.2d at 246. There, the appellate court affirmed the lower court's finding that the employer was vicariously liable for the accident caused by the employee. *Id.* at 248.

Defendants assert, however, that Grady was not acting within the scope of her employment at the time of the accident with Gavin. (Mem. in Supp. of Defs.'s Cross Mot. for Summ. J. 2.) They state, "[t]he undisputed material facts in the present case fail to demonstrate that the accident giving rise to plaintiff's claim occurred while Grady was using her personal vehicle *in the execution of her duties*." (Defs.'s Mem. in Reply to Pl.'s Opp'n 3.) In Defendants' view, Grady did not have consent from Worden to use her personal vehicle while performing job-related activities and at the time of the accident, Grady was not performing any job-related activities; she was simply driving to work. (*Id.* 3-4.) Defendants also claim that Worden did not exercise any right of control over Grady in the use of her automobile while she was visiting Annapolis. (Mem. in Supp. of Defs.'s Cross Mot. for Summ. J. 4.) Defendants draw parallels between the instant case and *Dhanraj v. Potomac Elec. Power Co.*, 506 A.2d 224 (Md. 1986), in which the court found that the employer was not liable for an employee's alleged negligence where the employee was driving his personal vehicle to a training session because the employer, "did not expressly or impliedly consent to the use of the automobile; it had no right to control [the employee] in its operation, and the use of the automobile was not of such vital

5

importance in furthering [the employer's] business that the control over it might reasonably be inferred." *Dhanraj*, 506 A.2d at 228.

Neither *L.M.T. Steel Products* nor *Dhanraj* clearly dictates the result in this case. In *L.M.T. Steel Products*, the employee was unmistakably operating his personal vehicle in the execution of his duties. The accident occurred when the employee left his jobsite in order to find the nearest telephone to call his employer's home-office with information necessary for preparation of the weekly payroll because the phone at the jobsite was in use. *See L.M.T. Steel Prods., Inc. v. Peirson*, 47 Md. App. 633, 639 (Md. Ct. Spec. App. 1981). The employee, by driving from one job-related activity to another, was executing his work duties. In the instant case, however, Grady was driving from breakfast to the Annapolis training site, not from one job-related activity to another.

In *Dhanraj*, the court found that the employer did not give express or implied consent to the employee to use his personal vehicle as his means of transportation to the training site because any allowance the employer paid to the employee "had no direct tie to the training facility. He received it because he was traveling out of his base zone and would have been entitled to the allowance no matter why he was going beyond his base zone to report to work." *Dhanraj*, 506 A.2d at 227. In the instant case, however, while neither Worden nor Grady remembers whether Grady was compensated for gas mileage, Grady was compensated for her hotel and meal expenses while she trained in Annapolis. That is, the allowance she was paid had a direct tie to the training. Additionally, Grady, who lived near Richmond, Virginia at the time, was sent by Worden to train for three days in Annapolis, Maryland. Whether Worden paid for Grady's gas mileage or not, it is reasonable to infer that Worden expected that Grady would use her personal vehicle to drive from Richmond to Annapolis.

6

However, expecting an employee to transport herself to training in another city by means of a personal vehicle is distinct from consenting to an employee's operation of her personal vehicle once she has reached her destination. There is no evidence that Worden gave Grady consent, express or implied, to use her personal vehicle in the execution of her duties. Rather, while Worden may have expected Grady to drive herself to training, driving one's self to training is similar to driving one's self to work and under Maryland law, "driving to and from work is generally not considered to be within the scope of a servant's employment." *Oaks v. Connors*, 660 A.2d 423, 427 (Md. 1995). Assuming that once Grady arrived at the Annapolis training site she was within the scope of her employment, mere travel to and from the training site was no more within the scope of her employment than was her travel to and from her usual jobsite in performing her duties as a Chick-fil-A manager. *See Dhanraj*, 506 A.2d at 226.

Furthermore, there is no evidence that Worden had control over the means by which Grady operated her personal vehicle. Neither Worden nor Grady remember whether Worden compensated Grady for her gas mileage, there is no evidence that Worden supplied Grady with a vehicle to use for the training in Annapolis, and there is no evidence that Worden paid for maintenance of Grady's vehicle. *See Oaks v. Connors*, 339 Md. 24, 32-33 (Md. 1995). There is also no evidence that Worden specified the route that Grady should take to the Annapolis training site. *See id.* at 33. Finally, there is no evidence that the use of the automobile was of such vital importance in furthering Worden's business that his control over it can reasonably be inferred. *See id.*; *Dhanraj*, 506 A.2d at 226.

In sum, I find that Worden did not give consent to Grady to use her personal vehicle in the execution of her duties, Grady was not executing her duties at the time of the accident, and Worden did not have the right to control Grady in her operation of her vehicle. Accordingly,

Grady was not acting within the scope of her employment at the time of the accident with Gavin, and as such, Worden cannot be held vicariously liable for Grady's alleged negligence.

A separate order effecting the rulings made in this Memorandum is being entered herewith.

Date: December 30, 2010                    /s/
                                           J. Frederick Motz
                                           United States District Judge